## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

GREAT LAKES TRIM, INC.
      Plaintiff,

v.
                                      Civil Action No.:

ELLSWORTH ADHESIVES SPECIALTY
CHEMICAL DISTRIBUTION, INC.,
      Defendant.

## COMPLAINT AND JURY DEMAND

Plaintiff, Great Lakes Trim, Inc. ("GLT") complains as follows against Defendant Ellsworth Adhesive Specialty Chemical Distribution, Inc. ("Ellsworth"):

### Introduction and Overview

1.      This lawsuit arises out of Ellsworth's supply of defective and non-conforming commercial adhesive (the "Adhesive") in breach of its contractual and warranty obligations, resulting in GLT suffering significant damages. This lawsuit is GLT's attempt to recover those damages.

2.      As described in detail below, Ellsworth supplies GLT the Adhesive under a valid and enforceable supply contract. GLT incorporates that Adhesive into automotive seatbacks it supplies to Ford Motor Company, so Ellsworth's warranties, representations and expertise pertaining to the Adhesive are particularly important.

3.      Indeed, Ellsworth provided GLT extensive warranties regarding the Adhesives. In those warranties, Ellsworth warranted, among other things, that the Adhesive was free from defects, fit the required specifications, was merchantable, was fit for GLT's intended use, and was also specifically fit for use in Ford's vehicles. GLT incorporated Ellsworth's Adhesive into its automotive seatbacks supplied to Ford, only to learn that a portion of the Adhesive was defective and non-conforming, resulting in GLT incurring significant costs, expenses and damages relating to, among other things, finished seatbacks incorporating the defective and non-conforming

Adhesive being rejected as unusable by Ford, sorting expenses, and costs associated with storing the unusable, defective and non-conforming Adhesive. GLT has also incurred, and continues to incur, legal fees associated with Ellsworth's breaches, which Ellsworth agreed it is responsible for under the applicable contract.

4.      Therefore, Ellsworth is liable to GLT for damages as a result of, among other things, supplying GLT the defective and non-conforming Adhesive, thereby breaching the express warranties and other contractual promises that Ellsworth provided GLT regarding the Adhesive, and additionally breached the implied warranties of merchantability and fitness for particular purpose.

**Parties, Jurisdiction and Venue**

5.      Plaintiff, GLT, is a Michigan corporation with its principal place of business in Willamsburg, Michigan. Therefore, GLT's citizenship for diversity purposes is Michigan.

6.      Defendant, Ellsworth, is a Wisconsin corporation with its principal place of business in Germantown, Wisconsin. Therefore, Ellsworth's citizenship for diversity purposes is Wisconsin.

7.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 because all parties are diverse from one another and the amount in controversy exceeds $75,000, exclusive of interest and costs.

8.      This Court has personal jurisdiction over Ellsworth because Ellsworth regularly conducts business in Michigan, including contracting for, and performing under, the contract at issue in this action.

9.      This Court also has personal jurisdiction over Ellsworth because Ellsworth consented to personal jurisdiction in Michigan, where GLT is located. **Ex. 2**, Terms, § 41.

10.      Venue is proper is this Court under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this district. Venue is additionally proper in this Court under 28 U.S.C. § 1391 because, for the reasons above, Ellsworth is subject to personal jurisdiction in this district.

**The Adhesive Contract and Ellsworth's Breaches**

11.     GLT manufactures and supplies Ford with automotive products, including seatbacks. GLT requires certain adhesive to manufacture those seatbacks it supplies Ford.

12.     Ellsworth sells the Adhesive which, according to Ellsworth, fit GLT's needs to manufacture the seatbacks.

13.     As a result, GLT and Ellsworth entered various purchase orders (the "Purchase Orders"), including, among others, GLT Purchase Order No. 1343933 (**Ex. A**), for Ellsworth to supply, and GLT to purchase, the Adhesive.

14.     The Purchase Orders incorporate GLT's Purchase Order Terms and Conditions (the "Terms") (**Ex. B**). The Purchase Orders and the Terms are collectively referred to as the "Contract."

15.     Ellsworth did not object to the Purchase Orders and shipped against them without objection.

16.     Ellsworth accepted the Contract when it shipped the Adhesive pursuant to its terms. *See* **Ex. B**, Terms, § 1.

17.     Among other things, Ellsworth agreed that the Contract "contain[ed] the entire agreement between [GLT] and [Ellsworth] and, except as otherwise expressly stated in th[e] [Contract], supersed[ed] all prior agreements, orders, quotations, proposals and other communications relating to the [Adhesive] and there [were] no other understandings or agreements, verbal or otherwise, in relation [t]hereto that exist between [GLT] and [Ellsworth]." ***Id***.

18.     Under the Contract, Ellsworth provided GLT several express warranties regarding the Adhesive.

19.     Indeed, Ellsworth expressly warranted, among other things, that the Adhesive would "(i) conform to all drawings, specifications, samples and other descriptions furnished, specified or adopted by [GLT]; . . . (iii) be merchantable; (iv) be free from any defects in design, to the extent furnished by [Ellsworth] or any of its subcontractors or suppliers, even if the design has

3

been approved by [GLT]; (v) be free from any defects in materials and workmanship; [and] (vi) be fit, sufficient and suitable for the particular purpose for which [GLT] intends to use the [Adhesive], including the specified performance in the component, system, subsystem, and vehicle location and the environment in which they are or may reasonably be expected to perform[.]" *Id.*, Terms, § 14.

20.     Ellsworth also expressly "acknowledge[d] that [Ellsworth] kn[ew] the particular purpose for which [GLT] intend[ed] to use the [Adhesive][.]" *Id.*

21.     Under the Contract, Ellsworth further agreed that it would "indemnify and hold [GLT] . . . harmless from and against all liabilities . . . losses, costs, damages and expenses of any nature or kind (including consequential and special damages . . . lost profits . . . production interruption costs, inspection, handling and reworking charges, professional and other legal fees, and other costs associated with [GLT]'s administrative time, labor and materials) arising from or as a result of: (i) any breach of [Ellsworth]'s Warranties; and (ii) any other acts, omissions or negligence of [Ellsworth] or of any of its subcontractors or suppliers in connection with [Ellsworth]'s performance of its obligations under th[e] [Contract]." *Id.*

22.     Pursuant to Uniform Commercial Code §§ 2-314 and 2-315, as codified in MCL 440.2314 and MCL 440.2315, Ellsworth additionally provided GLT implied warranties of merchantability and fitness for a particular purpose regarding the Adhesives.

23.     Despite these obligations under the Contract and the law, Ellsworth supplied GLT defective and non-conforming Adhesive.

24.     Indeed, Ellsworth supplied Adhesive that, among other things, caused significant vinyl delamination, resulting in severe adhesion issues.

25.     Put more simply, the defective Adhesive did not adequately stick.

26.     This caused the seatbacks supplied to Ford to be defective.

27.     The defective Adhesive was contained in Ellsworth lots #UK20B01596 and #UK21462182.

28.     As a result, Ford could not use the seatback's GLT supplied containing the defective Adhesive. Thus, GLT was unable to utilize or sell, and had to scrap, the finished seatbacks containing the defective Adhesive, causing GLT significant damage.

29.     GLT additionally incurred significant additional costs and expenses sorting the Adhesive to ensure that no further defective and non-conforming Adhesive was incorporated into the seatbacks, and ultimately, Ford's vehicles.

30.     GLT has repeatedly asked Ellsworth to stand behind its products and to honor its obligations under the Contract and the law. Ellsworth, however, has refused to reimburse GLT for its damages arising from Ellsworth's supply of defective and non-conforming Adhesive despite Ellsworth (a) providing the extensive warranties in the Contract; (b) expressly confirming to GLT that the Adhesive was defective before it was purchased by GLT; and (c) expressly stating to GLT that GLT would be reimbursed for all incurred damages related to the defective Adhesive.

31.     Indeed, Ellsworth visited GLT's facility in Williamsburg, Michigan on multiple occasions to conduct a root-cause investigation into the defective Adhesive it supplied GLT. And after visiting twice, Ellsworth brought in its own supplier, Bostik, to further confirm the cause of the defective Adhesive.

32.     As a result of this extensive investigation and multiple visits, Ellsworth and Bostik concluded that the defective Adhesive was the result of a to-be-identified contamination occurring before the Adhesive was sold to GLT. Indeed, Ellsworth and Bostik affirmatively stated that GLT was not at fault for the defective Adhesive. Instead, Ellsworth assured GLT that it would be reimbursed for all costs incurred because of its supply of defective Adhesive.

33.     GLT provided Ellsworth a detailed breakdown of the costs, damages and expenses arising from the defective Adhesives.

34.     To this day, however, Ellsworth has not reimbursed GLT anything.

35.     Even under the conclusions of its own subject matter expert, Ellsworth sold GLT defective Adhesive in breach of the express warranties in the Contract, and the implied warranties Ellsworth provided GLT at law.

36.     In clear breach of contract, and contrary to its own assurances after investigating the Adhesive, Ellsworth has refused to compensate GLT for the significant costs, expenses and damages incurred because of Ellsworth's breaches of contract and warranty.

37.     As stated above, under the Contract, Ellsworth must also reimburse GLT for all legal fees GLT incurs because of Ellsworth's breaches. *See* **Ex. 2**, Terms, § 14.

### COUNT I—BREACH OF CONTRACT

38.     GLT incorporates its preceding allegations.

39.     GLT and Ellsworth entered into a valid and enforceable Contract.

40.     GLT has complied with all its obligations under the Contract.

41.     Ellsworth has breached the Contract by, among other things, supplying defective and non-conforming Adhesive and refusing to reimburse GLT for its costs, expenses and damages related thereto.

42.     Ellsworth's breaches of the Contract have further caused GLT to incur attorneys' fees, which Ellsworth is obligated to pay under the Contract.

43.     Because of Ellsworth's breaches of the Contract, GLT has incurred significant costs, expenses and damages, including but not limited to, finished seatbacks incorporating the defective and non-conforming Adhesive being rejected as unusable by Ford, sorting expenses, costs associated with storing the unusable, defective and non-conforming Adhesive, and legal fees.

### COUNT II—BREACH OF EXPRESS WARRANTY

44.     GLT incorporates its preceding allegations.

45.     Ellsworth supplied Adhesive to GLT pursuant to a Contract and expressly warranted that, among other things, the Adhesive would "(i) conform to all drawings, specifications, samples and other descriptions furnished, specified or adopted by [GLT]; . . . (iii) be merchantable; (iv) be free from any defects in design, to the extent furnished by [Ellsworth] or any of its subcontractors or suppliers, even if the design has been approved by [GLT]; (v) be free from any defects in materials and workmanship; (vi) be fit, sufficient and suitable for the particular

purpose for which [GLT] intends to use the [Adhesive], including the specified performance in the component, system, subsystem, and vehicle location and the environment in which they are or may reasonably be expected to perform." *Id.*, Terms, § 14.

46.     Ellsworth breached its express warranties by, among other things, supplying GLT with defective and non-conforming Adhesive.

47.     The defective Adhesive did not meet the express warranties.

48.     All conditions precedent to GLT's enforcement of the Contract have occurred or been met.

49.     Ellsworth has notice of the defects and nonconformities and its breaches of the express warranties.

50.     Because of Ellsworth's breaches of the express warranties in the Contract, GLT has incurred significant costs, expenses, and damages.

## COUNT III—BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

51.     GLT incorporates its preceding allegations.

52.     Pursuant to Uniform Commercial Code Section 2-314, codified at MCL § 440.2314, Ellsworth's sales of the Adhesive were accompanied by an implied warranty of merchantability. Ellsworth's implied warranty of merchantability was in addition to its express warranties under the Contract.

53.     Pursuant to the implied warranties of merchantability, Ellsworth warranted that the Adhesive was merchantable.

54.     Ellsworth breached its implied warranty of merchantability by, among other things, supplying defective and non-conforming Adhesive to GLT that was not merchantable.

55.     Ellsworth has notice of the defects and non-conformities and its breaches of implied warranties.

56.     Because of Ellsworth's breach of its implied warranties of merchantability, GLT has incurred significant costs, expenses and damages.

**COUNT IV—BREACH OF IMPLIED WARRANTY OF FITNESS FOR PARTICULAR PURPOSE**

57.     GLT incorporates its preceding allegations.

58.     Pursuant to UCC Section 2-315, codified at MCL § 440.2315, Ellsworth's sales of the Adhesive were accompanied by an implied warranty of fitness for a particular purpose. Ellsworth's implied warranty of fitness was in addition to its express warranties under the Contract.

59.     Ellsworth was aware of the ordinary, intended, and particular purposes for the Adhesive, including its utilization and incorporation into GLT's automotive components it sells to Ford.

60.     GLT relied on Ellsworth's expertise, skill, or judgment to select or furnish suitable goods.

61.     Ellsworth breached its implied warranty of fitness by, among other things, supply defective and non-conforming Adhesive to GLT that was not fit for its intended purpose.

62.     Ellsworth has notice of the defects and non-conformities and its breaches of implied warranties.

63.     Because of Ellsworth's breach of its implied warranty of fitness, GLT has incurred significant costs, expenses and damages.

**COUNT V—CONTRACTUAL INDEMNIFICATION**

64.     GLT incorporates its preceding allegations.

65.     The Contract between GLT and Ellsworth expressly provides that Ellsworth will indemnify GLT from any and all costs incurred as a result of Ellsworth's breach of warranty.

66.     Ellsworth breached its warranties by, among other things, supplying defective and non-conforming Adhesive.

67.     Because of Ellsworth's breaches of warranty, GLT has incurred significant costs, expenses and damages.

68.     Under the Contract, Ellsworth is obligated to indemnify GLT for these losses.

8

69.     As a result, Ellsworth is liable to GLT.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiff Great Lakes Trim, Inc. asks this this Court to enter judgment in its favor and against Defendant Ellsworth Adhesives Specialty Chemical Distribution, Inc. granting the following relief:

A.     Award GLT money damages sufficient to compensate it for all forms of economic loss, including without limitation, direct damages, incidental damages, consequential and special damages, lost profits and other costs incident to Ellsworth's breaches of contract and warranty;

B.     Award GLT its actual legal fees and other legal costs arising out of Ellsworth's breaches of contract and warranty; and

C.     Award GLT such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ Christopher R. Struble
Daniel N. Sharkey (P53837)
Christopher R. Struble (P83714)
BROOKS WILKINS SHARKEY & TURCO PLLC
401 S. Old Woodward Avenue, Suite 400
Birmingham, Michigan 48009
248-971-1800; struble@bwst-law.com

Dated:  February 22, 2022          *Counsel for Plaintiff*

## JURY DEMAND

Plaintiff Great Lakes Trim, Inc. demands a trial by jury under Fed. R. Civ. P. 38.

Respectfully submitted,

/s/ Christopher R. Struble
Daniel N. Sharkey (P53837)
Christopher R. Struble (P83714)
BROOKS WILKINS SHARKEY & TURCO PLLC
401 S. Old Woodward Avenue, Suite 400
Birmingham, Michigan 48009
248-971-1800; struble@bwst-law.com

Dated:  February 22, 2022          *Counsel for Plaintiff*